# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM S. CROWE,<br>    Plaintiff, | CIVIL ACTION |
| v. | |
| SOBIESKI SERVICES, INC.,<br>    Defendant. | NO. #17-1310 |

## MEMORANDUM OPINION

Plaintiff William Crowe is in the heating and air conditioning business. For years, he owned his own company, which served customers in several states including New Jersey. In September 2014, he entered into an employment and asset purchase agreement with Defendant Sobieski Services, Inc., a larger company in the industry. The parties thought the deal would be mutually beneficial: Sobieski would be able to expand its footprint in New Jersey, and Crowe, with access to Sobieski's capital, would be in a position to attract more customers through New Jersey's Home Performance Program – a government program designed to, *inter alia*, reduce residential energy costs. Things did not go as planned, and on December 30, 2015, Sobieski fired Crowe. Crowe then sued Sobieski for breach of contract and defamation. Pending now is Sobieski's Motion for Summary Judgment on all of Plaintiff's claims. For the reasons set forth below, Defendant's Motion shall be granted in part and denied in part.

  I.  **Facts**

Pursuant to the employment agreement, Sobieski acquired all of Plaintiff's customer service contracts, as well as any deposits paid on those contracts and future revenues associated with such contracts. Plaintiff, in turn, became Sobieski's "New Jersey General Manager and Sales Representative." The agreement provided him with an annual salary of $125,000 and the potential to share in profits. Plaintiff's obligations under the agreement were to assist with

Sobieski's expansion into New Jersey – including sales and program management efforts – and to effectuate the transition of his company's service contracts to Sobieski.

After Plaintiff's termination, the parties disputed who owed the other money. Sobieski, believing that it was owed approximately $119,000, contacted the Camden Prosecutor's Office and the Winslow Township Police Department to ask about filing a criminal complaint. Sobieski also submitted an insurance claim to its insurer for misappropriated funds. Specifically, Sobieski asked its insurer to cover the $119,000 loss under a policy that covered employee theft. In making its insurance claim, Sobieski sent to its insurer the communications it had with law enforcement to suggest Plaintiff had misappropriated the funds.

Moreover, Sobieski and Plaintiff could not agree on whose responsibility it was to continue to service their customers that had service contracts. Crowe maintains that, following his termination, he sought to transfer some of the service contracts to one Bob McAllister. McAllister, aware of the parties' dispute and seeking to avoid liability if he were to take on the contracts, contacted Sobieski. During those conversations, John Sobieski told McAllister that Crowe was "dishonest" and "misappropriated" funds.

The parties dispute whether McAllister read an email he received from a Sobieski employee that accused Plaintiff of dishonesty and theft. The factual record is unclear. The email, dated April 2, 2016, was drafted by Richard Steele (Sobieski's Chief Financial Officer) to Dan Logan (Sobieski's lawyer), John Sobieski (Sobieski's Chief Executive Officer), and Tim Smith (Sobieski's Vice President of Operations). In the context of describing the breakdown of the business relationship with Crowe, Steele wrote that Crowe is "dishonest at best." He described Sobieski's actions as "blatant theft," claiming that Crowe had kept funds which belonged to Sobieski. Smith subsequently forwarded the email to McAllister. At his deposition,

McAllister initially denied seeing the email but later said it was "possible" that he read it.

Plaintiff ultimately filed suit, alleging that Sobieski breached the employment contract and defamed him in its insurance claim and in its communications (e-mails and spoken) with McAllister.

## II. Legal Standard

Summary judgment must be granted to a moving party if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Alabama v. North Carolina*, 560 U.S. 330, 344 (2010). Material facts are determined by reference to the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute "exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *See U.S. ex rel. Greenfield v. Medco Health Solutions, Inc.*, 880 F.3d 89, 93 (3d Cir. 2018). The non-moving party must show where in the record evidence a genuine dispute exists and not merely deny the moving party's pleadings. *See id*. On summary judgment, a court "may not make credibility determinations or engage in any weighing of the evidence." *See Paladino v. Newsome*, 885 F.3d 203, 209-10 (3d Cir. 2018). However, "conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment," although "a single, non-conclusory affidavit . . . when based on personal knowledge and directed at a material issue, is sufficient to defeat summary judgment." *See id*. at 208-09.

## III. Analysis

### A. Breach of Contract

The parties agree that Delaware law governs Plaintiff's contract claim. Accordingly, to survive summary judgment, Plaintiff must have adduced sufficient evidence to establish: "1) a contractual obligation; 2) a breach of that obligation by the defendant; and 3) resulting damage to the plaintiff." *See In re G-I Holdings, Inc.*, 755 F.3d 195, 202 (3d Cir. 2014).

The parties do not dispute that they entered into a negotiated contract that required payment of an annual salary and performance bonuses to Plaintiff. The employment agreement also provided that Plaintiff could be terminated immediately "for cause" if he did not "adequately perform" in his position. It further required Plaintiff to meet a sales target of 1.7 million dollars "to justify his base salary." Although Plaintiff catalogues a difficult transition process – which he characterizes as Sobieski's failure to devote resources to the New Jersey Division – he does not point to any provision in the contract that concerns the amount or type of resources that Sobieski was required to provide. And, the Court will not, as Plaintiff would have it, read one such provision into the contract. *Id*. at 202, 204 (a court should not imply a contractual protection when the contract does not provide for one and when the parties could have easily drafted one).

There was, however, a provision requiring Plaintiff to meet a sales target or face termination. Both parties agree that: (1) "[Plaintiff] was aware that the [a]greement imposed on him a minimum sales requirement of $1.7 million" and (2) "[Plaintiff] did not reach his $1.7 million minimum sales goal during his employment with [Defendant]." This failure to meet his sales goal, by the explicit terms of the contract, warranted his termination. Thus, Plaintiff cannot establish a breach of contract, and summary judgment shall be granted as to this claim.

**B. Defamation**

Plaintiff claims that Sobieski defamed him after terminating him. Specifically, Plaintiff references two sets of communications. The first involves the e-mail from Sobieski's Chief Financial Officer, and the second involves statements made by Sobieski to an insurance company to make a claim under an employee theft policy.

1. *Choice of Law*

As a threshold matter, the parties dispute which state's defamation laws apply. After

some back and forth, Sobieski contends that Delaware law applies and that, under that state's laws, its statements are conditionally privileged. Plaintiff position is that Pennsylvania law applies.

A federal court sitting in diversity must apply the choice of law rules of its forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Thus, the Court applies Pennsylvania's choice of law rules. *See id.* In Pennsylvania, a court must first determine whether there is a conflict at all between the varying state laws. *See Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007). "If two jurisdictions' laws are the same, then there is no conflict at all, and a choice of law analysis is unnecessary." *Id*. However, if relevant differences in the laws exist, the conflict must then be classified as a "true, false, or an unprovided-for situation." *Id*.

An analysis of each state's defamation law shows that, in the context of the issues raised here, the law is the same in both jurisdictions. In Pennsylvania, the Plaintiff must prove the following when properly raised:

> (1) The defamatory character of the communication.
> (2) Its publication by the defendant.
> (3) Its application to the plaintiff.
> (4) The understanding by the recipient of its defamatory meaning.
> (5) The understanding by the recipient of it as intended to be applied to the plaintiff.[1]
> (6) Special harm resulting to the plaintiff from its publication.
> (7) Abuse of a conditionally privileged occasion.

*See Joseph v. Scranton Times L.P.*, 129 A.3d 404, 424 (Pa. 2015) (citing 42 Pa. Cons. Stat. Ann. § 8343(a)). Similarly, in Delaware, a plaintiff must prove: "(1) defamatory communication; (2) publication; (3) the communication refers to the plaintiff; (4) a third party's understanding of the

---

[1] Though this requirement is not explicit in Delaware law, the difference is irrelevant here as no party contends that this element is material.

communication's defamatory character; and (5) injury." *See Bloss v. Kershner*, 2000 WL 303342 at *6 (Del. Super. Mar. 9, 2000), *aff'd*, 2001 WL 1692160 (Del. Dec. 21, 2001). Moreover, insofar as Sobieski invokes a conditional privilege in response to Plaintiff's claim of defamation, both Pennsylvania and Delaware require Plaintiff to prove abuse of a conditional privilege to render Sobieski liable. *See Meades v. Wilmington Hous. Auth.*, 875 A.2d 632 (Del. 2005) (published in table) (requiring plaintiff to prove abuse of a conditional privilege).[2]

Second, both states look to the same source of law – the Restatement (Second) of Torts – in the defamation context. *See, e.g.*, *Joseph*, 129 A.3d at 429-30 (stating, "this Court has a tendency to adopt in defamation matters" the Restatement (Second) of Torts); *Q-Tone Broad., Co. v. Musicradio of Md., Inc.*, 1994 WL 555391 at *4 (Del. Super. Aug. 22, 1994) ("The Court adopts here . . . the Restatement (Second) of Torts §§ 558-576."). The Restatement recognizes a "common interest privilege," which applies to defamatory communications among parties having a common interest and generally shields the publisher of the statement from liability for those statements. *See* RESTATEMENT (SECOND) OF TORTS § 596 (1977). And, courts in both states have cited to that Restatement provision. *See, e.g.*, *Foster v. UPMC South Side Hosp.*, 2 A.3d 655, 664 (Pa. Super. 2010) (citing Section 596 of the Restatement (Second) of Torts); *O'Neill v. White*, 1987 WL 17680 at *3 (Del. Super. Sep. 28, 1987) (same).

And third, the application of a common interest privilege also occurs in the same circumstances in each state. In Delaware, the common interest privilege "extends to communications made between persons who have a common interest for the protection of which the allegedly defamatory statements are made." *See Pierce v. Burns*, 185 A.2d 477, 479 (Del.

---

[2] Although the sixth element of "special harm" in the Pennsylvania statute, at first blush, appears different from Delaware's requirement of "injury," any distinction is immaterial here in that the parties do not contend that the special harm and injury distinction is relevant for their dispute.

6

1962). Similarly, in Pennsylvania, the privilege applies "when the speaker and the recipient share a common interest in the subject matter and both are entitled to know about the information." *See Foster*, 2 A.3d at 664. Moreover, in both states, the application of a privilege to the facts is an issue for the court to decide. *See Baird v. Dun & Bradstreet*, 285 A.2d 166, 171 (Pa. 1971) ("[I]t is always for the court to determine whether the alleged defamatory publication is thus privileged."); *Pierce*, 185 A.2d at 480 (in Delaware, "[a]s to whether or not an occasion is privileged . . . it is the function of the court to determine this as a matter of law.").

Because the law, as relevant here, is the same in each state, no conflict exists here, and a choice of law analysis is unnecessary. *See Hammersmith*, 480 F.3d at 230.

2. *Application of the Privilege*

Sobieski does not contend that its statements about Plaintiff are not defamatory. Instead, Sobieski argues that the common interest privilege applies to its statements. Defendants who make defamatory statements are not liable for them if those statements are "published upon an occasion that [is] conditionally privileged." *See* RESTATEMENT (SECOND) OF TORTS, § 593 (1977). One such occasion of a conditional privilege occurs when the parties share a common interest. *See id*. § 596.

Like Delaware and Pennsylvania state courts, this Court takes as its starting point Section 596 of the Restatement (Second) of Torts. Section 596 defines an occasion as conditionally privileged "if the circumstances lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that there is information that another sharing the common interest is entitled to know." *See id*.; *see also Foster*, 2 A.3d at 664 (common interest privilege applies "when the speaker and the recipient share a common interest in the subject matter and both are entitled to know about the information."); *Pierce*, 185 A.2d at 479 (common interest privilege "extends to communications made between persons who have a

common interest for the protection of which the allegedly defamatory statements are made."). The comments to the rule indicate specifically that "[p]ersons associated together in professional activities are likewise within the rule stated in this Section." *See id.* cmt. d. In fact, the common interest privilege applies in those situations where there is "a close relationship, such as between members of a family, a work or business relationship, owners of common property, or common members of an organization." *See Wilson v. Am. Gen. Finance, Inc.*, 807 F. Supp.2d 291, 299 (W.D. Pa. 2011).

a. Communications to McAllister

Concerning its statements to McAllister, Sobieski claims it is protected by the common interest privilege in two separate ways. First, Sobieski claims that it shared an interest with McAllister because McAllister sought to avoid liability and service the contracts. Next, Sobieski claims that it is protected by the privilege because it applies to the employer-employee context, including to statements made to others with an interest in the employee's termination. Neither is persuasive.

Initially, Sobieski contends that the privilege applies because McAllister testified that he contacted Sobieski to determine which customers had service contracts and to ensure he could service them without incurring liability to Sobieski. According to Sobieski, McAllister's testimony demonstrates the common interest among them. But Defendant fails to tie McAllister's interest in avoiding liability or in servicing the contracts with the Defendant's defamatory statements that Plaintiff was a "thief," "dishonest," or guilty of "misappropriation." Effectively, Defendant does not point to record evidence suggesting that it "correctly or reasonably" believed that McAllister was "entitled to know" about its allegations against Crowe. *See* RESTATEMENT (SECOND) OF TORTS § 596. Moreover, in seeking a prospective waiver from Sobieski of any liability he might incur by servicing the contracts, McAllister does not appear to

share with Sobieski the "close relationship" to which the common interest relationship tends to apply. *See Wilson*, 807 F. Supp.2d at 299 (common interest privilege applies to "a close relationship, such as between members of a family, a work or business relationship, owners of common property, or common members of an organization."). Indeed, the discussions of a waiver of potential liability suggest that Defendant and McAllister's relationship was more adversarial than "close."[3]

Next, Sobieski suggests that it shared a common interest with McAllister based on cases concerning the application of the privilege to the employer-employee relationship, but no such factual analogy exists here. Indeed, courts have typically interpreted this privilege to apply to: (a) communications involving the employer-employee relationship, *see Foster*, 2 A.3d at 664; *Burr v. Atl. Aviation Corp.*, 332 A.2d 154, 155 (Del. Super. 1974), *rev'd on other grounds*, 348 A.2d 179 (Del. 1975)); (b) communications regarding terminations of employees, though it is cabined to communications among employees involved in terminations, *see, e.g.*, *Schuster v. DeRocili*, 2000 WL 1211504 at *5 (Del. Super. June 15, 2000), *rev'd on other grounds*, 775 A.2d 1029 (Del. 2001); *Foster*, 2 A.3d at 663-64; and (c) statements made to prospective employers of the defamed plaintiff, *see Bickling v. Kent Gen. Hosp.*, 872 F. Supp. 1299 (D. Del. 1994) ("[A] qualified privilege would protected [defendant's] statements if he had initially communicated them to plaintiff's prospective employers."); *Garvey v. Dickinson Coll.*, 763 F. Supp. 796, 798 (M.D. Pa. 1991) (where Defendant submitted a recommendation letter about an employee that included defamatory material about plaintiff, privilege applied because

---

[3] Sobieski implies, in a footnote, that it was entitled to make those statements when its integrity was called into question by Plaintiff. *See Beckman v. Dunn*, 419 A.2d 583, 588 (Pa. Super. 1980) (finding a conditional privilege applied "because [Defendant's] integrity was called into question by [Plaintiff's] letter"). But Defendant's reliance on that part of *Beckman* is misplaced because it involved the "publisher's interest," not the common interest privilege. *See id.* at 588; *see also* RESTATEMENT (SECOND) OF TORTS § 594 (1977) (defining a "publisher's interest" for a conditional privilege to apply).

9

"[Defendant] could reasonably have believed that the [new] employer had right to a full and fair account of [that employee's] performance"). But McAllister falls into none of these buckets: he was not Crowe's employer, another person involved in Crowe's termination, or a prospective employer of Crowe soliciting a reference.[4]

In sum, the conditional privilege does not apply here. Summary judgment shall be denied with respect to the defamation claim based on Sobieski's representations to McAllister.

### b. Statements to the Insurance Company

Defendant's defamatory statements to its insurer, however, are privileged.[5] The conditional privilege applies to communications among other persons sharing a common interest, such as communications among franchisees, *see AAMCO Transmissions, Inc. v. Marino*, 1991 WL 224579 at *5 (E.D. Pa. Oct. 21, 1991), and credit reporting agencies. *See Baird*, 285 A.2d at 171. Here, Defendant had an insurance policy providing coverage for employee theft. In order to make claims under its policy, Defendant needed to convey to its insurer the facts that comprised its claim for payment, including, for instance, its belief that Plaintiff committed theft. And Defendant's insurer has an interest in the facts of the claim to determine whether it needed to make a payment pursuant to the policy. *See, e.g.*, *Uema v. Nippon Express Haw., Inc.*, 26 F. Supp.2d 1241, 1249 (D. Haw. 1998) (finding the communications between an insured and its insurer is privileged because the insured is "acting, at the very least, to promote the private interest of the companies."). Thus, Defendant's statements to its insurer fall under the common interest privilege.

---

[4] Even the case Sobieski cites from New Jersey is inapposite. *See Gallo v. Princeton Univ.*, 656 A.2d 1267, 1274 (N.J. Super. 1995). There, the interest shared was financial, as tuition-paying students were entitled to know if University property was being diverted for personal gain by an employee. *Id*. Here, no similar financial interest exists between McAllister and Sobieski.

[5] Plaintiff makes no argument to the contrary.

3. *Abuse of a Conditional Privilege*

Up to this point in the analysis, the laws of both states are the same, and no conflict exists. Similarly, with respect to the abuse of a conditional privilege, both states leave the decision on whether the privilege has been abused to the jury. *See Agriss v. Roadway Express, Inc.*, 483 A.2d 456, 463 (Pa. Super. 1984) ("It is . . . a question of fact for the jury whether a privilege has been abused."); *Burr v. Atl. Aviation Corp.*, 348 A.2d 179, 181 (Del. 1975) ("The question whether a conditional privilege has been abused . . . is a factual question for the jury"). However, a difference exists in the applicable standard to overcome that privilege: Pennsylvania requires showing only negligence, but Delaware requires actual malice, excessive publication or bad faith. *Compare Am. Future Sys., Inc. v. Better Bus. Bureau of E. Pa.*, 923 A.2d 389, 398-99 (Pa. 2007) *with Meades*, 875 A.2d 632 (published in table).

But this difference is immaterial because under either state's standard, Plaintiff has pointed to sufficient facts from which a jury might infer the abuse of the privilege. Plaintiff argues that Sobieski began slandering him over a course of time after the parties had ended their relationship. Specifically, Plaintiff points to Defendant's communication with its insurer. That communication included emails that refer to Defendant's prior complaints to law enforcement and show that Defendant's insurance claim occurred after Plaintiff had retained a lawyer. At the very least, the facts raised by Plaintiff at this stage could lead a reasonable juror to infer that Defendant's intent in making those statements was not to obtain payment from its insurer, but for an improper purpose, such as posturing for litigation. *See Gonzalez v. Avon Products, Inc.*, 609 F. Supp. 1555, 1559-60 (D. Del 1985) (stating that "[t]he Court cannot say as a matter of law that a juror would be unreasonable in concluding" defendant's publication to a larger group of employees and "departure from standard practice" could imply bad faith because the question "involve[d] some inquiry into the mind of the publisher"). Thus, summary judgment will be

11

denied as to the defamation claim predicated on Sobieski's discussion with the insurer.[6]

    An appropriate order follows.

**BY THE COURT:**

**/s/ Wendy Beetlestone**

**Date: August 3, 2018**                                      **WENDY BEETLESTONE, J.**

---

[6] Sobieski's final defense is that its statements that Plaintiff committed theft were substantially true. However, there is a factual dispute over who owes whom money. Accordingly, Sobieski is not entitled to summary judgment on the defamation claim because the Court cannot determine, at this juncture, that Plaintiff stole Sobieski money.